BOOK 2238 PAGE 329
Position 5

FILED
BOOK 2238 PAGE 329-33
'96 SEP 23 PM 1 58
RUTH C. GARRETT
REGISTER OF DEEDS
DURHAM COUNTY, N.C.

| SATISFACTION: The debt secured by the within Deed of Trust together with the note(s) secured thereby has been satisfied in full. |
|---|
| This the _____ day of _____, 19____. |
| Signed: _____ |

Recording: Time, Book and Page

Tax Lot No. _____   Parcel Identifier No. _____
Verified by _____ County on the _____ day of _____, 19____
by _____

Mail after recording to  Janet B. Dutton   PO Drawer 1529  Hillsborough, NC  27278

This instrument was prepared by  Janet B. Dutton (COLEMAN, GLEDHILL & HARGRAVE, P.C.)

USDA-FmHA
Form FmHA 1927-1 NC
(Rev. 8-94)

## REAL ESTATE DEED OF TRUST FOR NORTH CAROLINA

THIS DEED OF TRUST is made and entered into by and between the undersigned _____
ROSALIND BROWN (single)

whose post office address is  2112 Apt D-4, Broad Street

residing in  Durham  County, North Carolina as trustor'(s), herein called "Borrower," and  Thurman E. Burnette , Wake County, North Carolina, as trustee, herein called "Trustee," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, as beneficiary, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation agreement or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| September 23, 1996 | $115,000.00 | 7 ¼ | September 23, 2029 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures such future advances made within ten (10) years from the date of the execution of this instrument to anyone herein called Borrower when evidenced by a note or notes covering loans made or insured under the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949, provided that the total principal indebtedness of the original and future loans should not exceed $ 115,000.00 subject to the same terms and conditions regarding the assignment of said notes as hereinabove provided and all references in this instrument to the "note" shall be deemed to include such future notes;

29239

GOVERNMENT EXHIBIT
C

18

FmHA 1927-1 NC (Rev. 8-94)

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and as security for such future advances as mentioned above pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949, and at all times when the note is held by the Government, and in consideration of the above-described loan(s), Borrower does hereby grant, bargain, sell, convey, and assign unto the above-mentioned trustee with general warranty

the following-described property situated in the State of North Carolina, County(ies) of __Durham__

Tax Map No. 920.1..27

BEING all of Lot 39, Section Four, Phase One, BRIAR CREEK SUBDIVISION, according to that plat of survey recorded in Plat Book 122, Page 29, Durham County Registry.

together with all rights (including the rights to timber and mining products, gravel, oil, gas, coal or other minerals), interests, easements, allotments, hereditaments and appurtenances (including but not limited to bulk tobacco curing barns) thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein-all of which are herein called "the property."

TO HAVE AND TO HOLD the property unto Trustee, Trustee's successors, grantees and assigns forever and in fee simple;

IN TRUST, NEVERTHELESS, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS the title to the property to the Government against all lawful claims and demands whatsoever except any liens, encumberances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property, and not to use the real property or allow it to be used for any unlawful or illegal activity which impairs or may impair the value of the security.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default) including but not limited to costs of evidence of title to and survey of the property, cost of recording this and other instruments, attorneys' fees, trustees fees, court costs, and expenses of advertising, selling, and conveying the property.

BOOK **2238** PAGE **331**

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as beneficiary hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) The power to appoint a substitute trustee is hereby granted to the Government and its assigns, to be exercised at any time hereafter, without notice and without specifying any reason therefor, by filing for record in the office where this instrument is recorded an instrument of appointment, whereupon the substitute trustee shall succeed to all the estates, rights, powers, and trusts herein granted to or vested in Trustee, and the former trustee or substitute trustee shall be divested thereof; and notice of the exercise of this power and any requirement of, or right to require, a bond from any trustee hereunder, are hereby waived.

(16) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(18) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die, or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) authorize and request Trustee to foreclose this instrument and sell the property as provided by statutes in effect on the date the foreclosure proceeding is filed with the Clerk of the Court, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(19) At Government's request, and in accordance with Item (18d) above, Trustee may foreclose this instrument and sale the property either for cash or secured credit, at Government's option; Trustee may conduct foreclosure sale without being personally present through an agent or substitute trustee authorized orally or in writing by Trustee or Government; and at such sale Government and/or its agents may bid and purchase for the Government as a stranger.

(20) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. In case the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

(23) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent and dower and curtesy.

(24) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, age, handicap, familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, age, handicap or familial status.

(25) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

BOOK 2238 PAGE 332

(26) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Trustee or the Government to Farmers Home Administration at Raleigh, North Carolina 27609, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(27) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

WITNESS the hand(s) and seal(s) of Borrower this __23rd__ day of __September__, 19 __96__.

_Rosalind Brown_ (SEAL)
ROSALIND BROWN

_____ (SEAL)

STATE OF NORTH CAROLINA

COUNTY OF __Orange__

I, __Janet B. Dutton__, a Notary Public of said County, do hereby certify that __Rosalind Brown__

the grantors, personally appeared before me this day and acknowledged the due execution of the foregoing deed of trust.

WITNESS my hand and official seal this __23rd__ day of __September__, 19 __96__.

My commission expires __2-18-97__

_Janet B. Dutton_
Notary Public.

(SEAL)

STATE OF NORTH CAROLINA  __Durham__ COUNTY

The foregoing certificate(s) of __Janet B. Dutton__ __N/P Durham Co. NC__

is (are) certified to be correct. This instrument was presented for registration this day and hour and duly recorded in the office of the Register of Deeds of __Durham__ County, N.C. in Book __2238__ Page __329__.

This __23__ day of __Sept.__, A.D., 19 __96__ at __1:58__ o'clock __P__. M.

RUTH C. GARRETT
Register of Deeds

By _Gail Blank_
Deputy/Assistant Register of Deeds

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture.

☆U.S. GOVERNMENT PRINTING OFFICE: 1994-0-558-942

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note  9/23/96   Amount of Note  $115,000.   Date of mortgage  September 23, 1996

Date of Note _____   Amount of Note _____   Date of mortgage _____

Type of assistance:
    1. Interest credit  /X/
    2. Homeownership Assistance Program  / /

Address of Property:  2 Orion Circle

                      Rougemont, NC  27572

BORROWER:  Rosalind Brown

CO-BORROWER:

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United States of America, acting through the Farmers Home Administration (FmHA) (herein called "the Government") pursuant to section 521 of Title V of the Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears above (herein sometimes referred to as "borrower"), supplements the note(s) from borrower to the Government as described above, and any promissory note(s) for loans made to borrower in the future by the Government. Such future notes, when executed, will be listed below the signature line of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the repayment of the subsidy granted me (us) in the form of interest credits or Homeownership Assistance Program (HOAP) subsidy (hereinafter called "subsidy").

3    I (we) agree that the real property described in the mortgage(s) listed above is pledged as security for repayment of the subsidy received or to be received. I (we) agree that the subsidy is due and payable upon the transfer of title or non-occupancy of the property by me (us). I (we) understand that the real estate securing the loan(s) is the only security for the subsidy received. I (we) further understand that I (we) will not be required to repay any of the subsidy from other than the value (as determined by the Government) of the real estate, mortgaged by myself (ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)   SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 2

4   I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us). If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loan(s) will not be released of record til the total amount owed the Government has been repaid.

5   I (we) agree that Paragraph 6 of this agreement is null and void should the property described in the mortgage(s) be voluntarily conveyed to the Government or liquidated by foreclosure.

6   When the debt is satisfied by other than voluntary conveyance of the property to the Government or by foreclosure, I (we) agree that sale proceeds will be divided between the Government and me (us) in the following order:

   (a) Unpaid balance of loans secured by a prior mortgage as well as real estate taxes and assessments levied against the property which are due will be paid.

   (b) Unpaid principal and interest owed on FmHA RH loans for the property and advances made by FmHA which were not subsidy and are still due and payable will be paid to the Government.

   (c) I (we) will receive from the sale proceeds actual expenses incurred by me (us) necessary to sell the property. These may include sales commissions or advertising cost, appraisal fees, legal and related costs such as deed preparation and transfer taxes. Expenses incurred by me (us) in preparing the property for sale are not allowed unless authorized by the Government prior to incurring such expenses. Such expenses will be authorized only when FmF determines such expenses are necessary to sell the property, or will likely result in a return greater than the expense being incurred.

   (d) I (we) will receive the amount of principal paid off on the loan calculated at the promissory note interest rate.

   (e) Any principal reduction attributed to subsidized interest calculations will be paid to the Government.

   (f) I (we) will receive my original equity which is the difference between the market value of the security, as determined by the FmHA appraisal at the time the first loan subject to recapture of subsidy was made, and the amount of the FmHA loan(s) and any prior lien. This amount is ___-0-___ and represents ___-0-___ percent of the market value of the security. (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by the market value of the security when the loan was closed.) The dollar amounts and percent will be entered at the time this agreement is signed by me (us) and will be part of this agreement.

(g) The remaining balance, after the payments described in (a) thru (f) above have been paid is called <u>value appreciation</u>. The amount of value appreciation to be paid to the Government, in repayment or the subsidy granted, is the lesser of (1) the full amount of the subsidy or (2) an amount determined by multiplying the value appreciation by the appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59    | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119  | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h) I (we) will receive the amount of value appreciation less the amount paid the Government as determined in (g) above. I (we) will also receive an additional amount in proportion to my original equity by reducing the amount of value appreciation due to the Government by the percent of my (our) original equity as shown in (f) above.

(i) If I (we) am the recipient of HOAP, the amount of value appreciation to be recaptured will be calculated as if I (we) had paid 1 percent interest on the loan, unless the average interest rate paid by me (us) was greater than 1 percent. In such cases it will be determined based on the average interest rate paid by me (us).

(j) If this agreement is for a subsequent loan(s) only, the amount of repayment determined in (g) above will be reduced by the following percent:_____. This percent will be determined by dividing the amount of the loan(s) subject to recapture by the total outstanding RH debt. This percentage will be entered at the time I (we) sign this agreement.

(k) If this agreement is for more than one loan that is subject to recapture, the subsidy repayment computations will be based on the total subsidy granted on all loans.

(9-27-79)   SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4

7    When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.

X _____ Borrower
ROSALIND BROWN

_____ Co-Borrower

January 27, 1997
Date signed

Accepted and Agreed to
By _____ (FmHA Official)
RALPH E. SADLER, JR.
Community Development Manager (Title)

January 27, 1997
Date

oOo